## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DYLAN BITTLINGMAIER, individually and on behalf of all others similarly situated,<br><br>                Plaintiff,<br><br>    v.<br><br>WEST 63 EMPIRE ASSOCIATES LLC,<br><br>                Defendant. | Civil Action No.: 1:26-cv-1209<br><br>**CLASS ACTION COMPLAINT**<br><br>JURY TRIAL DEMANDED |

Plaintiff Dylan Bittlingmaier ("Plaintiff") brings this action on behalf of himself, and all others similarly situated against West 63 Empire Associates LLC ("The Empire Hotel" or "Defendant"). Plaintiff makes the following allegations pursuant to the investigation of his counsel and based upon information and belief, except as to the allegations specifically pertaining to himself, which are based on personal knowledge.

### NATURE OF THE ACTION

1. This is a class action seeking monetary damages, restitution, and declaratory relief from Defendant West 63 Empire Associates LLC arising from the unfair and deceptive practice of using drip pricing to hide junk fees from consumers, and misleading consumers into believing that its hotel rooms are cheaper than they actually are.

2. Defendant is a hospitality company that owns and operates The Empire Hotel, located at 44 West 63rd Street, New York, NY 10023 and The Empire Hotel's website: www.empirehotelnyc.com (the "Website").

3. For years, The Empire Hotel has used unlawful trade practices sometimes called "drip pricing" to market and advertise its hotel rooms. Rather than disclose the full price of a hotel room up front, Defendant baits a consumer into believing they are getting a lower price for a hotel room by listing a price on the search page that excludes additional taxes and fees. Before a

consumer checks out, they are ambushed by expensive fees significantly increasing the total cost of a hotel room.

4.    Furthermore, these fees are hidden, and only visible by selecting a hyperlinked "Taxes and fees" button, and are only shown to consumers after they have clicked through numerous pages, reaching the checkout screen.

5.    "Drip Pricing" allows companies like The Empire Hotel to capture consumers seeking out bargains by tricking them into believing they are paying lower prices before adding fees later on in the shopping process. Drip pricing robs consumers of the right to know the actual rate they are paying for a hotel and denies them the opportunity to fairly compare hotel rates.

6.    Consumers are more likely to pay a higher price when a company engages in drip pricing and Defendant has profited enormously from these practices.

7.    Plaintiff relied on Defendant's false and misleading misrepresentations that The Empire Hotel's prices were lower than they actually were. Plaintiff, Class Members, and New York Subclass Members, would not have booked a hotel room at The Empire Hotel had they known the true price of the room when they selected it.

8.    Defendant's acts and/or omissions constitute violations of N.Y. Gen. Bus. Law § 349 and § 350.

9.    For these reasons, Plaintiff seeks relief in this action individually, and on behalf of all other purchasers of Defendant's hotel rooms that were similarly marketed, for actual and/or statutory damages, reasonable attorneys' costs and fees, and injunctive relief.

## JURISDICTION AND VENUE

10.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members, and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest, fees, and costs, and at least one class member is a citizen of a state different from Defendant.

11.    This Court has personal jurisdiction over Defendant because Defendant conducts substantial business within New York, operates its hotel in the Southern District of New York, and

2

has its principal place of business located in this District.

12.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant resides in this District and a substantial part of the events or omissions giving rise to the claim occurred in this District.

## PARTIES

13.     Plaintiff Dylan Bittlingmaier is an individual consumer who, at all times material hereto, was a citizen and resident of Pittsford, New York. In or around November 2023, Plaintiff purchased a room for two nights at The Empire Hotel. Plaintiff booked the hotel room through Defendant's website, www.empirehotelnyc.com, while he was in New York. When Plaintiff found the hotel room listing on the Website, he was shown a price he believed was the actual amount he would have to pay for the hotel room. However, once Plaintiff navigated to the checkout screen, Defendant added additional taxes and fees to the total price. This total price was more than the original advertised price. The transaction flow process he viewed on Defendant's Website was substantially similar as that depicted in Figures 1 through 5 in this Complaint.

14.     Defendant West 63 Empire Associates LLC is a Delaware limited liability company with its principal place of business at 512 7th Avenue, 15th Floor, New York, NY, 10018. Defendant is a hospitality company that owns and operates The Empire Hotel, located at 44 West 63rd Street, New York, NY 10023 and The Empire Hotel's website: www.empirehotelnyc.com.

## RELEVANT FACTUAL ALLEGATIONS

### *Drip Pricing and Junk Fees*

15.     For years, the hotel industry has deceived its consumers through drip pricing strategies by advertising low prices for rooms, then adding hidden junk fees right before consumers check out.

16.     According to the FTC, "Drip Pricing is a pricing technique in which firms advertise only part of a product's price and reveal other charges later as the customer goes through the

3

buying process."[1] Consumers are shown one price when they initially view a product and then as they check out are barraged with numerous, "junk fees" which significantly increase the total cost of a product.

17.     Junk fees are fees that a seller requires a consumer to pay but is not transparently disclosed to consumers. According to the White House Council of Economic Advisors, junk fees "lur[e] in consumers with the promise of a low price, but when they get to the register, they discover that price was never really available." Further, these fees "harm consumers and actively undermine competition by making it impractical for consumers to compare prices, a linchpin of our economic system."[2]

18.     Indeed, as companies that engage in junk fee practices are aware, consumers choose products or services based on the advertised "base price," and not based on the price inclusive of fees, which is obscured by partitions in the purchase flow.[3]

19.     By not properly disclosing a price with all fees included, "consumers are forced to incur higher total search and cognitive costs" or "make an incomplete, less informed decision that may result in a more costly room."[4]

---

[1] *The Economics of Drip Pricing*, FED. TRADE COMM'N (May 21, 2012), https://www.ftc.gov/news-events/events/2012/05/economics-drip-pricing.

[2] *The Price Isn't Right: How Junk Fees Cost Consumers and Undermine Competition*, THE WHITE HOUSE (Mar. 5, 2024), https://bidenwhitehouse.archives.gov/cea/written-materials/2024/03/05/the-price-isnt-right-how-junk-fees-cost-consumers-and-undermine-competition/#:~:text=%5B2%5D%20Junk%20fees%20harm%20consumers,linchpin%20of%20our%20economic%20system.

[3] Alexander Rasch et al., *Drip Pricing & Its Regulation: Experimental Evidence*, 176 J. Econ. Behavior & Org. 353 (2020), available at https://www.sciencedirect.com/science/article/abs/pii/S0167268120301189 ("[Buyers] based their purchase decision exclusively on the base price").

[4] Mary W. Sullivan, *Economic Issues: Economic Analysis of Hotel Resort Fees*, BUREAU OF ECON. FED. TRADE COMM'N (Jan. 2017), https://www.ftc.gov/system/files/documents/reports/economic-analysis-hotel-resort-fees/p115503_hotel_resort_fees_economic_issues_paper.pdf.

20.     Drip pricing and junk fees rob consumers of a fair choice when they are selecting a hotel room and ultimately forces them to pay a higher price or incur higher search costs than they otherwise would have.

21.     Given this, it is no surprise companies are motivated to use deceptively low prices at the outset while hiding junk fees through drip pricing for as long as possible in the search and purchase process, as duping consumers into paying junk fees—by advertising artificially low prices and forcing users through a partitioned purchase flow—generates substantial revenue.

22.     In many instances, companies keep the advertised price at the outset artificially low and pass some of the cost of the item into the junk fee that consumers do not see until the end, instead of adding the increased cost of the item to the low advertised price at the outset, which would deter consumers from being lured into the purchase flow.

23.     Companies are also able to increase hidden junk fees without suffering meaningful market consequences.[5] In particular, companies can charge excessive junk fees in part because drip pricing impedes fair, honest, and free market competition as they are not adequately disclosed alongside the base price.[6]

24.     Hotels know that this marketing practice is both effective and profitable. In online ticket sales for example, customers subjected to hidden fees spend up to 21 percent more than those shown the true price upfront.[7]

25.     In 2022, the American Hotel & Lodging Association found that only 6% of hotels nationwide charge a mandatory resort/destination/amenity fee, but the White House Council of Economic Advisors estimates the revenue of these fees to be approximately $3.3 billion.[8]

26.     The hotels who do take part in this deceptive practice, including Defendant, have been rewarded significantly for misleading their customers.

---

[5] *Drip Pricing & Its Regulation: Experimental Evidence*, *supra* n.3.
[6] *Id.* ("[F]irms fiercely compete in base prices but not in drip prices," so "total price increases when firms use drip pricing").
[7] *The Price Isn't Right: How Junk Fees Cost Consumers and Undermine Competition*, *supra* n.2.
[8] *Id.*

27.     Companies that advertise deceptively low prices that do not include hidden junk fees will lure consumers away from properly behaving competitors that do not engage in such practices (and thus appear to charge higher prices) and will earn more profit than those competitors.[9]

28.     Ultimately, competitor companies and consumers face the consequences of these deceptive practices.

***FTC And New York City Regulations On Drip Pricing***

29.     Moreover, the conduct of drip pricing runs afoul of the FTC Act itself. *See* 15 U.S.C. § 45(a)(1) (declaring unlawful "unfair or deceptive acts or practices in or affecting commerce").

30.     The FTC's guidance on bait and switch advertising has long stated that "[n]o statement . . . should be used in any advertisement which creates a false impression of the . . . value . . . of the product offered, or which may otherwise misrepresent the product in such a manner that later, on disclosure of the true facts, the purchaser may be switched from the advertised product to another." 16 C.F.R. § 238.2(a).

31.     In 2012, the FTC warned the hotel industry that drip pricing as it pertains to charging resort fees and other surcharges violates consumer protection law when hotels misrepresent the price consumers pay for their hotel rooms.[10] Despite this warning, hotel companies have continued to charge hidden, junk fees to consumers on their websites

32.     More recently, the FTC passed the Rule on Unfair or Deceptive Fees (the "Rule"), which went into effect on May 12, 2025, directly prohibiting these junk fees, as well as the practice of drip pricing. The Rule "specifies that it is an unfair and deceptive practice for businesses to

---

[9] *Id.* ("[W]here there is uncertainty about the drip size, sellers with a high drip-price limit can earn profits above the competitive level.").

[10] *FTC Warns Hotel Operators that Price Quotes that Exclude 'Resort Fees' and Other Mandatory Surcharges May Be Deceptive*, FED. TRADE COMM'N (Nov. 28, 2012), https://www.ftc.gov/news-events/news/press-releases/2012/11/ftc-warns-hotel-operators-price-quotes-exclude-resort-fees-other-mandatory-surcharges-may-be.

offer, display, or advertise any price of live-event tickets or short-term lodging without clearly, conspicuously and prominently disclosing the total price."[11]

33.    Specifically, "[t]he Rule prohibits bait-and-switch pricing and other tactics used to hide total prices and mislead people about fees in the live-event ticketing and short-term lodging industries."[12]

34.    "The [R]ule further specifies that it is an unfair and deceptive practice for businesses to misrepresent any fee or charge in any offer, display, or advertisement for live-event tickets or short-term lodging."[13]

35.    The Rule makes sense in light of consumer protection and predatory practices by companies like Defendant. Research has shown that consumers spend more money on the same goods when they are not shown the total price up front.[14] Therefore, by omitting junk fees from the advertised cost of a hotel room, hotels can reap significantly more profits from every customer who ultimately purchases these rooms with the added junk fees.

36.    Furthermore, the FTC has argued that consumers who wish to compare the true prices of goods incur additional search costs when the full price is not disclosed up front due to the time it takes to click through multiple pages to find the true cost of a product.[15] These search costs cost a consumer time, effort, and money.

37.    The FTC provides examples of mandatory fees and charges that must be included in the total price under the Rule. Relevant here, the FTC explains when "[a] resort charges a nightly

---

[11] Trade Regulation Rule on Unfair or Deceptive Fees, 90 Fed. Reg. 2066 (Jan. 10, 2025), available at https://www.federalregister.gov/documents/2025/01/10/2024-30293/trade-regulation-rule-on-unfair-or-deceptive-fees.

[12] *FTC Rule on Unfair or Deceptive Fees to Take Effect on May 12, 2025*, FEDERAL TRADE COMMISSION (May 5, 2025), https://www.ftc.gov/news-events/news/press-releases/2025/05/ftc-rule-unfair-or-deceptive-fees-take-effect-may-12-2025.

[13] *Id.*

[14] Trade Regulation Rule on Unfair or Deceptive Fees, *supra* n.11.

[15] *Id.*

rate of $199, plus a mandatory resort fee of $39 per day[,] [t]he required resort fee must be included in the total price[.]"[16]

38.    Even more recently, the Mamdani administration, with the New York City Department of Consumer and Worker Protection ("DCWP"), explicitly banned junk fees for hotel stays in New York city.[17]

39.    This section was passed due to "the DCWP [] receiv[ing] many complaints from consumers involving hidden, undisclosed or unexpected fees associated with hotel stays.[18] "In 2025, DCWP received over 300 complaints from consumers related to hidden hotel fees or unexpected holds."[19]

40.    New York city's Hotel Fee Disclosures regulation, effective February 21, 2026, models the FTC's rules, officially declaring "it a deceptive trade practice under the City's Consumer Protection Law to offer, display or advertise a price for a hotel without clearly and conspicuously disclosing the total price of the stay, including all mandatory fees."[20]

41.    Samuel A.A. Levine, the consumer and worker protection commissioner, has stated that under this new rule, "if you check out and suddenly there's a fee you didn't see before, that's illegal."[21]

---

[16] *The Rule on Unfair or Deceptive Fees: Frequently Asked Questions*, *supra* n.12. *Mamdani Administration Bans Hotel Hidden Fees and Unexpected Credit Card Holds*, NYC.GOV (Jan. 21, 2026), available at https://www.nyc.gov/mayors-office/news/2026/01/mamdani-administration-bans-hotel-hidden-fees-and-unexpected-cre.
[18] *Notice of Public Hearing and Opportunity to Comment on Proposed Rules* (Aug. 1, 2025), available at https://www.nyc.gov/assets/dca/downloads/pdf/about/DCWP-NOH-Rules-Relating-to-Limitations-on-Hotel-Fees.pdf.
[19] *Mamdani Administration Bans Hotel Hidden Fees and Unexpected Credit Card Holds*, *supra* n.17.
[20] *Id*.
[21] *NYC Bans Hidden Hotel Fees Ahead of World Cup Tourist Influx*, BLOOMBERG (Jan. 21, 2026), available at https://www.bloomberg.com/news/articles/2026-01-21/nyc-bans-hidden-hotel-fees-ahead-of-world-cup-tourist-influx.

42.    "Economists estimate that banning hotel junk fees will save [New York city] consumers more than $46 million in 2026."[22]

43.    Put simply, advertising an artificially low price at the outset to lure consumers into the transaction while adding on exorbitant and variable Junk Fees at the very end is bad for consumers and is bad for competition.

44.    This is the exact sort of conduct Defendant is engaged in, as exemplified in Figures 1 through 4.

45.    The use of deceptively low prices with added junk fees at the end of the transaction is inherently unfair, was condemned by the White House in 2024,[23] and has been explicitly prohibited or outlawed by the FTC, state legislatures, and now the city of New York

46.    As repeatedly recognized, junk fees fall squarely within "[d]eceptive acts or practices" and "[f]alse advertising" and therefore, Defendant's acts and/or omissions, described below, are in violation N.Y. Gen. Bus. Law § 349 and § 350.

### The Empire Hotel's Drip Pricing

47.    The price of a hotel room is one of the most important factors that consumers take into account when selecting a hotel.[24]

48.    The Empire Hotel capitalizes on this fact by positioning itself as having cheaper rooms, when in reality, its rooms contain hidden fees, and/or are more expensive than the advertised price.

49.    The Empire Hotel has continued to use drip pricing techniques to advertise their hotel rooms on its Website, despite the past guidance from the FTC.

---

[22] *Mamdani Administration Bans Hotel Hidden Fees and Unexpected Credit Card Holds*, *supra* n.17.

[23] *The Price Isn't Right: How Junk Fees Cost Consumers and Undermine Competition, supra* n.2.

[24] Alex Temblador, *Study Shows Hotel Price and Ratings More Important Than Brand Name*, TRAVELPULSE (Apr. 19, 2019 2:41 PM ET), https://www.travelpulse.com/news/hotels-and-resorts/study-shows-hotel-price-and-ratings-more-important-than-brand-name#:~:text=Price%20is%20by%20far%20the,attention%20when%20selecting%20a%20property.

50.     When a person visits The Empire Hotel Website and navigates to "Book Now", they are able to select their desired dates and number of guests. *See* Figure 1.

**Figure 1**



51.     After selecting dates and number of guests, Defendant's website displays available room types. At this initial stage, the quoted daily room rate for each hotel room does not include the mandatory fees that a consumer must later pay. *See* Figure 2, next page. Therefore, a reasonable consumer would assume that the price shown on this screen is the price they will pay per night for the hotel room, unaware of how much Defendant later charges for its hidden fees.

**Figure 2**



52.    The "total cost" of a hotel room at The Empire Hotel, inclusive of fees, is not shown on this screen.

53.    Defendant advertises that the "Standard Room 1 Queen Bed", for example, costs $232 total for one night. *See* Figure 2, above.

54.    After a consumer selects "Book Now" for the hotel room they choose based on the initial price that excludes additional taxes and fees, they are presented with the checkout screens. *See* Figure 3 and Figure 4, next page.

11

**Figure 3**



**Figure 4**



55. For the "Standard Room 1 Queen Bed", selected in Figure 2, Figure 3, and Figure 4, the initial advertised price was $232, but after clicking to book the hotel room consumers are met with true price of $293.64. *See* Figure 2, Figure 3, and Figure 4.

56. After being baited with a price of $232, consumers reach the checkout page thinking that this will be the final price they pay, only to be ambushed with junk fees.

57. In order for a consumer to view why they are being charged more than the initially advertised price, they must navigate and select the "Taxes and fees" hyperlink that displays the itemized mandatory junk fees The Empire Hotel charges. *See* Figure 5.

**Figure 5**

| PRICE DETAILS | |
|---|---|
| Standard Room 1 Queen Bed<br>Advance Purchase<br>1 Night stay | $232.90 |
| Taxes and fees | $60.74 |
| New York State Tax | $13.68 |
| New York City Tax | $20.67 |
| New York City Javits Center Tax | $1.50 |
| New York City Occupancy Tax | $2.00 |
| Residence Fee | $22.89 |
| Fri, Feb 27, 2026 - Sat, Feb 28, 2026<br>1 Adult | |
| **Total**<br>Including taxes and fees | **$293.64** |
| ADD A ROOM | |

58. At this stage, consumers can see the mandatory "Residence Fee" of $22.89 that The Empire Hotel charges. *See* Figure 5, above. These hidden fees are junk fees because a consumer is required to pay them in order to make their purchase or hotel booking but have been hidden throughout the buying process.

59. In fact, even the initially advertised price of $232, exclusive of taxes and fees, is not accurate in and of itself, as the true price of the "Standard Room 1 Queen Bed", exclusive of taxes and fees, is actually $232.90. *See* Figure 5, above. Nowhere does Defendant disclose this

extra cost or include a breakdown of what it is for. This alone is fraudulent and deceptive, because consumers are baited with one initially advertised price, only to be charged more upon selecting that room to be booked and checking out. The taxes and mandatory junk fees, are then added on top of this separate price increase, causing the price a consumer ultimately pays to be well above the initially advertised price that they saw when browsing Defendant's hotel room options.

60.    Each of these tactics is detrimental to consumers because the advertised total prices for Defendant's hotel rooms are not the true total. Consumers may not be able to see or find the details of the charges and thus do not know that they may be required to pay such additional fees.

61.    Had customers been presented with the full price up front, they would have been better able to compare The Empire Hotel to other hotels charging their fees and accurate prices up front. By the time the consumer reaches the checkout page, they have already exhausted time and effort to find the best priced hotel and therefore may accept this higher price rather than continuing to search for another hotel room.

62.    The Empire Hotel benefits from deceptive practices on its websites by baiting price-conscious consumers with lower prices and hiding their "Residence Fee" behind a discrete button—only viewable to a consumer after they have reached the booking and checkout screens in the purchase flow.

63.    Defendant does not disclose any junk fees up front when advertising their hotel rooms on its websites and instead uses drip pricing tactics to trick customers into thinking that they are getting a bargain price, when in reality, they are not.

64.    These practices have misled and deceived consumers out of a fair choice when shopping for hotel rooms and have allowed Defendant's to reap massive profits.

**CLASS ACTION ALLEGATIONS**

65.    **Nationwide Class:**  Plaintiff Bittlingmaier seeks to represent a class defined as all individuals in the United States who booked a hotel room at The Empire Hotel.

14

66.    **New York Subclass:** Plaintiff Bittlingmaier also seeks to represent a class defined as all residents of New York who booked a hotel room at The Empire Hotel.  (collectively with the Nationwide Class, the "Classes").

67.    Excluded from the Classes is any entity in which Defendant has a controlling interest, and officers or directors of Defendant.

68.    Plaintiff reserves the right to amend or modify the Class and Subclass descriptions with greater specificity or further division into subclasses or limitation to particular issues based upon discovery or further investigation.

69.    Members of the Classes are so numerous that their individual joinder herein is impracticable.  On information and belief, members of the Classes are at least in the thousands. The precise number of members of the Classes and their identities are unknown to Plaintiff at this time but may be determined through discovery.  Members of the Classes may be notified of the pendency of this action by mail, email, and/or publication through the distribution records of Defendant.

70.    Common questions of law and fact exist as to all members of the Classes and predominate over questions affecting only individual Nationwide Class and Subclass members. Common legal and factual questions include, but are not limited to:

(a)    whether Defendant engaged in the wrongful conduct alleged herein;

(b)    whether Defendant's conduct violates FTC regulations referenced herein;

(c)    whether Defendant intentionally and knowingly misrepresented material facts with an intent to mislead consumers.

(d)    whether the marketing and advertisements for Defendant's hotel rooms included false and/or misleading statements or omissions;

(e)    whether Defendant was unjustly enriched; and

(f)    whether Defendant's conduct was fraudulent.

71.    The claims of the named Plaintiff are typical of the claims of the Classes in that the named Plaintiff and the Classes sustained damages as a result of Defendant's uniform wrongful

conduct, based upon Defendant's failure to properly disclose the total cost of its hotel rooms advertised and sold on The Empire Hotel Website.

72. Plaintiff is adequate representatives of the Classes because his interests do not conflict with the interests of the Nationwide Class and Subclass members he seeks to represent, he has retained competent counsel experienced in prosecuting class actions, and intends to prosecute this action vigorously. The interests of Nationwide Class and Subclass members will be fairly and adequately protected by Plaintiff and his counsel.

73. The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Nationwide Class and Subclass members. Each individual Nationwide Class and Subclass member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

**COUNT I**
**Unjust Enrichment**
**(On Behalf Of The Classes)**

74. Plaintiff incorporates by reference and re-allege herein all paragraphs alleged above.

75. Plaintiff brings this claim individually and on behalf of the members of the Nationwide Class, and New York Subclass against Defendant.

76. Plaintiff and members of the Classes conferred benefits on Defendant by

purchasing and booking Defendant's hotel rooms.

77.     Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff and members of the Classes' purchases of its hotel rooms. Retention of those monies under these circumstances is unjust and inequitable because Defendant falsely represented a lower discounted bargain hotel room price online than what consumers were actually charged.

78.     These misrepresentations caused injuries to Plaintiff and to members of the Classes because they would not have continued on to purchase or book Defendant's hotel rooms if the true facts were known to them upon first viewing Defendant's advertised prices.

79.     Because Defendant's retention of the non-gratuitous benefits conferred on them by Plaintiff, Nationwide Class members and Subclass Members are unjust and inequitable, Defendant must pay restitution to Plaintiff and Nationwide Class Members and Subclass Members for its unjust enrichment, as ordered by the Court.

**COUNT II**
**Fraud**
**(On Behalf of the Classes)**

80.     Plaintiff realleges and reincorporates by reference all paragraphs alleged above.

81.     Plaintiff brings this claim individually and on behalf of the Classes.

82.     At the time Plaintiff and members of the Class and Subclasses went to Defendant's Website and clicked the "Book Now" button, selecting their dates and number of guests, they were presented with a price they believed to be the total price of the hotel room. However, Defendant did not disclose, but instead concealed the total price, until after Plaintiff and members of the Class and Subclasses navigated through numerous screens.

83.     Defendant knew it was making fraudulent representations and omissions as to the actual price of the hotel booking in order to bait Plaintiff and members of the Class and Subclasses.

84.     Moreover, on the checkout screen Plaintiff and members of the Class and Subclasses must navigate to and select a discrete "Taxes and fees" hyperlink to display the hidden mandatory junk fees Defendant charges.

85.     In addition, separate from adding the "Residence Fee", Defendant's true price of a hotel room, exclusive of taxes and fees, increases in and of itself after consumers select a room and enter the booking and checkout process. Defendant never discloses this fact or provides an explanation for the increased charge.

86.     Defendant also knew that this concealment of the total price from the onset and lack of specification was material, and that a reasonable consumer would rely upon Defendant's omissions and misrepresentations in making purchasing decisions.

87.     Plaintiff and members of the Class and Subclasses did not know—nor could they have known through reasonable diligence—that Defendant was misrepresenting the actual price of the hotel before being baited into the purchase process.

88.     Plaintiff and members of the Class and Subclasses would have been reasonable in relying on Defendant's misrepresentations in making their purchasing decisions.

89.     Plaintiff and members of the Class and Subclasses had a right to rely upon Defendant's representations.

90.     Plaintiff and members of the Class and Subclasses sustained damages because of their reliance on Defendant's and misrepresentations, thus causing Plaintiff and members of the Class and Subclasses to sustain actual losses and damages in a sum to be determined at trial, including punitive damages.

**COUNT III**
**Violation Of N.Y. Gen. Bus. Law § 349**
**(On Behalf Of Plaintiff Bittlingmaier And The New York Subclass)**

91.     Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

92.     Plaintiff brings this claim individually and on behalf of the members of the New York Subclass against Defendant.

93.     Under GBL § 349, "[d]eceptive acts or practices in the conduct of any business, trade or commerce are unlawful."

94.     Plaintiff and New York Subclass members are "persons" within the meaning of the GBL § 349(h).

95.     Defendant is a "person, firm, corporation or association or agent or employee thereof" within the meaning of § 349(b).

96.     Defendant engaged in deceptive business practices by baiting consumers with an initial advertised price, before raising the price and adding junk fees at the checkout stage of a transaction, significantly increasing the total price.

97.     In doing so, Defendant engaged in deceptive acts or practices in violation of GBL § 349.

98.     Defendant's deceptive acts or practices were materially misleading.  Defendant's conduct was likely to and did deceive reasonable consumers, including Plaintiff, about the true price of Defendant's hotel rooms, as discussed throughout.

99.     Defendant's misleading conduct concerns hotel rooms booked from a popular hotel company and affects the public interest.  Defendant's conduct includes unfair and misleading acts or practices that have the capacity to deceive consumers and are harmful to the public at large.   Defendant's conduct is misleading in a material way because it fundamentally misrepresents the full price of hotel rooms.

100.    Plaintiff and New York Subclass members suffered ascertainable loss as a direct and proximate result of Defendant's GBL violations in that they incurred charges and/or paid monies they otherwise would not have incurred or paid had they known the true cost of the hotel room they booked.

101.    On behalf of himself and other members of the New York Subclass, Plaintiff seeks to enjoin Defendant's unlawful acts and practices described herein, to recover his actual damages or $50, whichever is greater, reasonable attorney's fees and costs, and any other just and proper relief available under GBL § 349.

**COUNT IV**
**Violation Of N.Y. Gen. Bus. Law § 350**
**(On Behalf Of Plaintiff Bittlingmaier And The New York Subclass)**

102.    Plaintiff incorporates by reference and re-alleges herein all paragraphs alleged above.

103.    Plaintiff brings this claim individually and on behalf of the members of the New York Subclass against Defendant.

104.    GBL § 350 provides that "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."

105.    Defendant's advertisement of the hotel rooms was false and misleading in a material way.  Specifically, Defendant advertised the hotel rooms with a price that excluded taxes, when in fact the total price of the hotel had significant fees, only later added in the processing flow.

106.    Plaintiff and New York Subclass members reasonably understand Defendant's misrepresentations to mean that the advertised hotel price was the price they would pay.

107.    This misrepresentation was consumer-oriented and was likely to mislead a reasonable consumer acting reasonably under the circumstances.

20

108. This misrepresentation has resulted in consumer injury or harm to the public interest.

109. As a result of this misrepresentation, Plaintiff and New York Subclass members have suffered economic injury because they incurred charges and/or paid monies they otherwise would not have incurred or paid had they known the true cost of the hotel room they booked.

110. By reason of the foregoing and as a result of Defendant's conduct, Plaintiff and New York Subclass members seek to enjoin the unlawful acts and practices described herein, to recover their actual damages or five hundred dollars, whichever is greater, three times actual damages, reasonable attorneys' fees and costs, and any other just and proper relief available under GBL § 350.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Bittlingmaier, individually and on behalf of the members of the Nationwide Class and New York Subclass prays for judgment as follows:

(a) For an order certifying the Classes under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff Bittlingmaier as representatives of the Nationwide Class, Plaintiff Bittlingmaier as representative of the New York Subclass, and Plaintiff's attorneys as Class Counsel to represent the Class and Subclass;

(b) For an order declaring that Defendant's conduct violates the statutes referenced herein;

(c) For an order finding in favor of Plaintiff and the Classes on all counts asserted herein;

(d) For compensatory and statutory damages in amounts to be determined by the Court and/or jury;

21

(e)      For prejudgment interest on all amounts awarded;

(f)      For an order of restitution and all other forms of equitable monetary relief;

(g)      For injunctive relief as pleaded or as the Court may deem proper; and

(h)      For an order awarding Plaintiff and the Classes their reasonable attorneys' fees and

expenses and costs of suit.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b)(1), Plaintiff demands a trial by jury of all issues so triable.


Dated: February 12, 2026                              Respectfully submitted,


**BURSOR & FISHER, P.A**


*/s/ Philip L. Fraietta*
Philip L. Fraietta

Philip L. Fraietta
50 Main Street, Suite 475
White Plains, NY 10606
914-874-0710 (tel)
914-206-3656 (fax)
pfraietta@bursor.com

**BURSOR & FISHER, P.A**.
Julian C. Diamond
1330 Avenue of the Americas, 32nd Floor
New York, New York 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-Mail: jdiamond@bursor.com

*Attorneys for Plaintiff and the Putative Class*

22